**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**EASTERN DIVISION**

| | |
|---|---|
| ASCEND HEALTH CORPORATION, a Delaware Corporation;<br><br>UHP, LP., a Delaware limited partnership (d/b/a University Behavioral Health of Denton);<br><br>RICHARD KRESCH, M.D., an individual;<br><br>and<br><br>ATIQUE KHAN, M.D., an individual,<br><br>   *Plaintiffs*,<br><br><br><br>   vs.<br><br><br><br>BRENDA WELLS, an individual,<br><br> 2815 Madison Grove Road<br> Greenville, NC 27858;<br><br>JOHN AND JANE DOES 1-10, presently unknown individuals;<br><br>   *Defendants.* | No. _____<br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF WITH JURY DEMAND** |

## COMPLAINT

Plaintiffs Ascend Health Corporation, a Delaware Corporation ("Ascend"), UHP, LP., a Delaware limited partnership doing business as University Behavioral Health of Denton (hereinafter referred to as "UBH"), Richard Kresch, M.D. ("Dr. Kresch"), and Atique Khan, M.D. ("Dr. Khan"), by and through their undersigned counsel, state as follows upon actual knowledge with respect to themselves and their own acts and upon information and belief as to all other matters complained of against Defendants Brenda Wells ("Wells") and John and Jane Does 1-10 ("Doe Defendants"):

## NATURE OF THE ACTION

1.     This is an action arising from Defendants' ongoing efforts and conspiracy to smear Plaintiffs' reputations, infringe upon Plaintiffs' intellectual property, and interfere with Plaintiffs' business and business prospects by way of false and defamatory Internet postings.

2.     Following the August 18, 2010 dismissal with prejudice, by agreement of the parties with no finding of liability on the part of the Defendants and no payments made by the Defendants, of an action filed by Wells against UBH and Dr. Khan in Denton County, Texas on January 25, 2010 ("the Texas lawsuit"), Wells began a concerted defamatory attack on the character and reputation of the Plaintiffs, in which others have joined, through numerous postings on various Internet sites as set forth herein.

3.     Each of the Defendants joined together with the joint purpose and material intent, and acted for and as actual and apparent agents of each other, and conspired together for the common cause and purpose of committing the acts described herein that substantially injured Plaintiffs.

4.     Defendants' tortious acts complained of herein are ongoing and continuous, and were, and are still, intended to ruin the reputation, regard, esteem and goodwill associated with Plaintiffs' names.

## THE PARTIES

5.     Plaintiff Ascend, owner of Plaintiff UBH, is a Delaware corporation that operates freestanding psychiatric hospitals and residential treatment centers providing inpatient services, day hospital services including partial hospitalization and intensive outpatient services, as well as residential substance abuse treatment.

6.      Plaintiff UBH, named "UHP, LP." is a limited partnership organized under the laws of the state of Delaware doing business as "University Behavioral Health of Denton," with its principal place of business in Denton, Texas.  Plaintiff UBH is a private freestanding psychiatric hospital specializing in mental health and chemical dependency care, and was a named Defendant in the Texas lawsuit.

7.      Plaintiff Dr. Khan is a psychiatrist licensed to practice medicine in the state of Texas and a resident of the state of Texas.  Dr. Kahn is the medical director of Plaintiff UBH, was a named Defendant in the Texas lawsuit and since has been singled out in a number of Defendants' false and defamatory Internet postings.

8.      Plaintiff Dr. Kresch is a psychiatrist licensed to practice medicine in the state of New York and a resident of the state of New York.  Dr. Kresch is the President and Chief Executive Officer of Ascend and has been singled out in a number of Defendants' false and defamatory Internet postings.

9.      Defendant Brenda Wells is a resident of Greenville, North Carolina and an associate professor of finance at East Carolina University in Greenville, North Carolina, and, according to her public Internet postings, a former patient of Plaintiffs.

10.      Defendants John and Jane Does 1 through 10 are individuals whose names and addresses of residence are currently unknown and unascertainable by Plaintiffs, who, according to Wells, have defamed Plaintiffs through various communications sent to Wells, and Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs intend to identify the Doe Defendants through means of discovery and will amend this lawsuit to identify the Doe Defendants by proper legal names upon obtaining such information.

11.     Defendants Wells and John and Jane Does 1 through 10 joined together with joint purpose and material intent, and acted for and as actual and apparent agents of each other, and conspired together for the common cause and purpose of committing the acts described herein that substantially injured Plaintiffs.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 and 1338.

13.     This Court also has original jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because the Plaintiffs are all citizens of a different state than the Defendants, and the amount in controversy exceeds $75,000.

14.     This Court has personal jurisdiction over Defendant Wells because she is domiciled and has residence in the state of North Carolina.

15.     Jurisdiction over Defendant Wells is constitutional because Wells is present in and maintains a domicile in North Carolina.

16.     Jurisdiction over the Doe Defendants is constitutional under the North Carolina long-arm statute, N.C. Gen. Stat. § 1-75.4, because the Doe Defendants engaged in substantial activity within and purposely, knowingly directed activity and defamatory statements into North Carolina causing injury and purposely availed themselves of the privilege of conducting activities within the state of North Carolina both through their conspiracy with Wells and otherwise.

17.     The claims alleged in this Complaint arise in the state of North Carolina and the Eastern District of North Carolina and elsewhere.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant Wells resides in this district and all Defendants have conspired together for the purpose of defaming the Plaintiffs.

## FACTUAL BACKROUND AND GENERAL ALLEGATIONS

19.     UBH is a private psychiatric hospital that has provided mental health and chemical dependency care since 2005.

20.     Ascend is the parent company of UBH.

21.     Dr. Khan is the medical director of Plaintiff UBH.

22.     Dr. Kresch is the President and CEO of Ascend.

23.     The Plaintiffs, each of them, depend to a great degree upon their reputations and the goodwill they have built up with the public at large, both generally in business and specifically in finding patients.

24.     Defendant Wells is listed as the Registrant, Administrative Contact, and Technical Contact for the domain <ubhdentonsucks.com> registered through GoDaddy.com, LLC, a Delaware limited liability company.

25.     Entry of the URL <ubhdentonsucks.com> into a web browser routes that browser to the URL http://ubhdenton.wordpress.com/, a web log entitled "WORST HOSPITALS IN AMERICA: UBH/MAYHILL" ("the blog").

26.     The home page of the blog invites readers to "[t]ell [their] story…" by directing them to the email address "info@ubhdentonsucks.com".

27.     Several of the posts on the blog target Dr. Khan and Dr. Kresch in particular.

28.     The purpose of the blog, evidenced in part by its URL and the referring URL, is to defame Ascend, UBH, and those associated with them.

29.     Wells uses the blog to publish numerous misleading, false, and defamatory statements about Plaintiffs in furtherance of her efforts to defame the Plaintiffs, including, but not limited to:

a. A post entitled "Dr. Con" [*sic*], tagged "the people involved", which lists the professional background of Dr. Kahn and comments "'Board Certified?' Give me a break."

b. A post entitled "Dr. Richard Kresch: the Mastermind of this Quack Shack", alleging, among other things, that "**[t]he deciding factor for most of the cases is how long the insurance benefits run**" and accusing Dr. Khan, Dr. Kresch and UBH of "insurance fraud" (*emphasis in original*).

c. A post entitled "Post traumatic stress? Yep!", alleging that Plaintiffs detained Wells against her will and that she "was trapped", because of her "great health insurance."

d. A post entitled "Reflections", which refers to UBH as a "shitty rat-filled" hospital and refers to UBH staff as "creepy and harmFUL" [*sic*].

e. A post entitled "Just waiting…", alleging that Wells was held against her will and misdiagnosed.

f. A post entitled "Why does UBH Denton Hold People Against their Will? Because it pays. Duh." alleging that UBH is a "cruel joke," that UBH engages in insurance impropriety and fraud, that Wells was held against her will by Plaintiffs, and stating that "UBH DENTON SUCKS!!!!!"

g.  A post entitled "Who am I….and what do I want?", in which Wells refers to Dr. Khan as an "arrogant little virus", accuses Dr. Khan of making a misdiagnosis and confusing Wells with another patient, and asks "do you think this is doing any good for your hospital's reputation?"

h.  A post entitled "The Facilities – What they Aren't Showing You", which includes an unlicensed image taken by Wells from UBH's website (Exhibit A) and states that there was a "rat … crawling around on the cafeteria food warmer."

i.  A post entitled "An Open Letter to Dr. Kresch", which includes an unlicensed image (Exhibit B) taken by Wells from Ascend's website and alleges that UBH Denton is an "insurance milking machine", and that staff meetings focus on who does and doesn't have insurance.  In addition, Wells, directing her comments at Dr. Kresch, claims "these facilities you run loosely disguise themselves as helpful resources…"

j.  A June 19, 2011 post entitled "Tales from a UBH Employee", in which Wells states that "[h]owever many days the insurance would pay for, the hospital would max out the days", that the US Military no longer uses UBH except for veterans, and that a UBH employee raped a patient at the facility.

k.  A February 15, 2012 post titled "My Story", which gives a description similar to that alleged by Wells in her January 25, 2010, lawsuit against

UBH and Dr. Khan, among others, alleging that information included in her medical records "was absolutely not true."

l.  The "My Story" post also alleges that Dr. Khan misdiagnosed Wells and confused her with another patient, and that UBH held Wells against her will, among other things.

m.  A March 12, 2012 post entitled "More Atrocities… would you want this for yourself (or your wife, or your mom?)", in which Wells alleges that when a patient signed a letter refusing medical treatment, UBH and Dr. Khan "began to shun her, refuse to feed her, and the patient advocate threatened to send her to the state mental hospital." This post goes on to state that "[s]he was forced to sleep in the MEN's unit."

n.  A similar March 14, 2012 post titled "UBH… you really shouldn't have done that", in which Wells alleges that a woman with pneumonia was denied medication and meals by UBH and its staff, and describes UBH staff as either "incompetent" or "under orders to be grossly neglectful of the patients in their care."

o.  A March 14, 2012 post entitled "Legends Academy: Another Scandal in the Making", in which Wells claims that UBH "strong arm[s]" parents into enrolling their children at a charter school called Legends Academy.

30.    These statements posted to the blog, among others, are false, defamatory, and intended by Wells to harm the Plaintiffs in their business and reputations.

31.    Wells glories in and brags about the success of the blog in several posts on the blog:

a. In one post, Wells notes 200 visits "in a few short months" and talks at length about the traffic the blog has received.

b. In another post, referring to the Plaintiffs, Wells states "SO, you won all rounds up until the point I built this blog" [*sic*].

c. Wells brags in another post "when one Googles UBH Denton my site is the SECOND ONE in the Google Search Results!"

d. Another posting dated March 8, 2012 announces the launch of a YouTube channel and directs viewers to "www.twitter.com/ubhdentonsucks" and www.facebook.com/ubhdentonsux.

e. In another post Wells states "I figure most any day now I'm going to get a letter from either Dr. Khan's lawyer, or the hospital's, telling me I have to take this site down."

f. A March 9, 2012 post proclaims the blog "had 422 hits on Thursday March 8 [2012]".

32.  Wells' campaign against Plaintiffs is not limited to the blog; Wells also posts comments on various other websites that link to the blog in an effort to further discredit and impugn the character of each of the Plaintiffs.

33.  Specifically, in a March 8, 2012 post to dallas.craigslist.org and a March 29, 2012 "event" on www.eventmonsters.com, both entitled "PSYCH HOSPITAL FRAUD: DENTON, TEXAS (United States)" Wells provides a link to www.ubhdentonsucks.com and makes the following false and defamatory statements about Plaintiffs:

a.  "[T]here is an ongoing investigation!"

b. "They meet with you after you arrive at a local hospital emergency room. If you appear to be unstable in any way, depressed, etc., they 'recommend' (and sometimes threaten or insist) that you sign yourself in, 'VOLUNTARILY', to their for-profit facility."

c. "When you get inside, you discover they have no real treatment for you, and, no beneficial therapies."

d. "Once you ask to be released, they refuse to release you under threat of commitment proceedings."

e. "[O]ther unacceptable conditions have been reported", listing:

i. "Confusing one patient with another";

ii. "Denying patients required medication(s)";

iii. "Falsifying or changing medical records"; and

iv. "Approximately 5-10 minutes maximum per day spent under a physician's supervision/care, and, many days not even seen by a physician."

34. These statements posted to dallas.craigslist.org and www.eventmonsters.com are false, defamatory, and intended by Wells to harm the Plaintiffs in their business and reputations.

35. Wells has also created another blog entitled "UBHDentonsucks" at the URL "ubhdenton.blogspot.com".

a. In a post entitled "Welcome to the HELL that is UBH Denton!," Wells alleges that people who ask to leave UBH are threatened with commitment proceedings "BECAUSE [THEY] HAVE GOOD HEALTH INSURANCE?????" (*emphasis in original*).

b. In another post Wells alleges "they told my boyfriend I had an addition [*sic*] to illegal drugs, which I most certainly did not, and the lab work I had done proves that no such substances were in my system."

36. These statements posted to ubhdenton.blogspot.com are false, defamatory, and intended by Wells to harm the Plaintiffs in their business and reputations.

37. Another blog entitled chantixsucks.com includes a February 27, 2012 post by Wells entitled "It's Genuinely Disgusting", which provides a link to the ubhdentonsucks.com website and discusses Wells' claims regarding her experience with UBH.

a. This February 27, 2012 chantixsucks.com post includes the UBH logo (Exhibit C), which Wells has not sought or received permission to use.

b. Wells refers to herself in the third person in the February 27, 2012 chantixsucks.com post: "There she was held against her will, confused with another patient, heavily medicated, and, led to believe that she was bipolar."

38. These statements posted by Wells to chantixsucks.com are false, defamatory, and intended by Wells to harm the Plaintiffs in their business and reputations.

39. Wells has also created a Facebook page at the URL www.facebook.com/ubhdentonsux (the "Facebook Page") which links to the ubhdentonsucks.com website mentioned above.

a. The Facebook Page features a number of unlicensed images from UBH's and Ascend's websites (Exhibit D, collectively), including various images (with captions) of the grounds and personnel.

b. Wells has added her own unflattering "captions" for the various images.

    c. To one image of a dining area, Wells has added "… [t]hey serve one variety of shitty food every day. You can take it or leave it."

40. These statements posted to www.facebook.com/ubhdentonsux are false, defamatory, and intended by Wells to harm the Plaintiffs in their business and reputations.

41. Wells has also posted defamatory statements to CNN's Ireport site under the username "Msprof68".

42. The profile for "Msprof68" indicates that this user is a college professor from Greenville, NC.

    a. The first post, dated February 21, 2012, makes a number of the same allegations made by Wells elsewhere, including that UBH "has been reported to repeatedly hold patients against their will, threaten commitment proceedings, and, even confuse patients with one another."

    b. This February 21, 2012 post provides a link to Wells' website, www.ubhdentonsucks.com.

    c. As herself, Wells is quoted in this February 21, 2012 post as having been threatened with commitment proceedings.

    d. Wells is further quoted in this February 21, 2012 post as saying "[o]nly when I made them realize they had me confused with another patient, who was a convicted felon, was I allowed to sign myself out of the hospital."

    e. Wells is further quoted as saying, regarding the Texas lawsuit, that "all they did was bully me into dropping mine."

      f.   A second Ireport, dated March 9, 2012 and titled "RAPE at UBH

         Denton Hospital", includes the caption "A father who yesterday picked

         up his daughter from a stay at this hospital got the most horrific shock of

         his life: he discovered his daughter was raped by a staff member…"

43.     These statements posted to CNN's Ireport site are false, defamatory, and intended by Wells to harm the Plaintiffs in their business and reputations.

44.     Wells has also posted defamatory statements to www.yellowpages.com under the username "UBHSUCKS".

      a.   The www.yellowpages.com posting links to Wells' website,

         www.ubhdentonsucks.com.

      b.   The www.yellowpages.com post accuses UBH of being "an insurance

         money machine, designed to keep people for as long as insurance

         benefits will pay."

      c.   The www.yellowpages.com post continues: "People who really need

         help are booted out if they can't pay and don't have insurance.

         Meanwhile, everyone with good health insurance is held for the

         maximum time allowed, even if they were admitted voluntarily and ask

         to leave."

45.     These statements posted to www.yellowpages.com are false, defamatory, and intended by Wells to harm the Plaintiffs in their business and reputations.

46.     On the website for "Texans for Parental Choice in Education", URL http://txpce.com/2010/11/05/a-denton-charter-school-educates-kids-with-a-special-need/, Wells responded to a post about continuing the education of patients treated at UBH by linking to the

blog at ubhdentonsucks.com and stating "I would not trust UBH Denton for anything. See http://www.ubhdentonsucks.com."

47.     These statements on the "Texans for Parental Choice in Education" website are defamatory and intended by Wells to harm the Plaintiffs in their business and reputations.

48.     On www.healthcarereviews.com, Wells created a link to the blog in a 1/10 rating of Dr. Khan, referring to him as a "poor excuse for a doctor!".

49.     This statement on www.healthcarereviews.com is defamatory and intended by Wells to harm Dr. Kahn in his business and reputation.

50.     In response to a post on www.topix.com about UBH offering free depression screenings, Wells posted as "Angry Patient" from Greenville, NC, including a link to the blog with the comment "I don't think I'd go there if I actually cared about my mental health."

51.     These statements on www.topix.com are defamatory and intended by Wells to harm the Plaintiffs in their business and reputations.

52.     Wells has also created a YouTube channel entitled "ubhdentonsucks" linking to the blog and intended by Wells to harm the Plaintiffs in their business and reputations.

53.     Wells has also created a twitter feed at "twitter.com/#!/UBHDentonSucks" linking to the blog and intended by Wells to harm the Plaintiffs in their business and reputations.

54.     In addition to the unlicensed use of images taken from UBH's and Ascend's websites as referenced above, Wells has posted other images taken from those websites (Exhibit E, collectively, including an image of the entryway, and a still image taken from a promotional video prepared by UBH).

55.     UBH and Ascend are the exclusive owners of the images and video from their websites used by Wells and referenced herein.

56.     UBH and Ascend have sought registration for copyright protection of the images and video from their websites used by Wells and referenced herein.

57.     Wells did not seek, and has not been given, license to use the images and video from UBH's and Ascend's websites used by Wells and referenced herein.

58.     Wells' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiffs.

59.     A number of Wells' Internet posts claim to be based upon information received by Wells from others, by email or other means, to wit:

> a.  In her post entitled "Who am I….and what do I want?", Wells claims: "At least two … people have contacted me to tell me they were mistreated by your hospital just as badly as I was."
>
> b.  In a post entitled "2010 in review… Site Stats", Wells claims to "… hav[e] heard from people who went there and were treated as badly as I was..."
>
> c.  In her "Why does UBH Denton Hold People Against their Will? Because it pays.  Duh." post, Wells alleges that a "former nurse from their facility has told me that when they hold daily staff meetings, the discussion emphasizes the patient's insurance benefits."
>
> d.  In a post entitled "Just waiting…", Wells alleges that she has "heard from entirely too many people who feel that their loves ones were signed into the hospital wrongly, or who got held there longer than they should have…"

e.  In her "Why Did I Agree to Go in the First Place?" post, Wells alleges that third parties told her, regarding UBH, that if she "had good health insurance, the doctor would file an order of commitment against [her]."

f.  In her post entitled "Dr. Richard Kresch: the Mastermind of this Quack Shack", Wells alleges:  "I have also talked with a former nurse from their hospital.  She said each day they have a staff meeting and they go over each patient's case.  **The deciding factor for most of the cases is how long the insurance benefits run.**" (*Emphasis in original*).

g.  In a post entitled "An Open Letter to Dr. Kresch", Wells claims to have removed the name from a comment made on the blog and alleges, essentially, that UBH improperly or fraudulently bills insurance companies.

h.  The "An Open Letter to Dr. Kresch" post references a "witness" list that purportedly includes "a former nurse who said that [UBH] staff meetings… focused on who had insurance and who didn't" and "a woman named Lisa" who Wells claims was released because "she was a self-paying patient and I was insured."

i.  In her March 22, 2012 post entitled "More Atrocities… would you want this for yourself (or your wife, or your mom?)", Wells alleges that "stories … pour in here" and goes on to say "most recently was the 59 year old woman who asked to leave the hospital.  When she signed her "AMA" (against medical advice) letter, they began to shun her, refuse to feed her, and the patient advocate threatened to send her to the state

mental hospital…"  This post goes on to allege that this Jane Doe was forced to sleep in a men's unit, among other things.

j.  The "More Atrocities… would you want this for yourself (or your wife, or your mom?)" post alleges that Wells "hear[s] … a lot from the victims of UBH" that staff members would avoid or refuse to return calls from family members of patients.

k.  A June 19, 2011 posting titled "Tales from a UBH Employee" claims that Wells "got permission [to use information] from the employee who sent" that information but "does not want to be identified."  This post includes false and defamatory claims that "[h]owever many days the insurance would pay for, the hospital [UBH] would max out the days," and that a rape took place at UBH, among others.

l.  A March 21, 2012 post entitled "Another Story… this time she's 16" purports to be posted by a former patient and claims that there was "complete chaos," that UBH "made me stay longer than i [*sic*] needed to be there," that children in the facility were "trying to get 'booty juiced' or were fighting each other [or] dating each other [and] bragging about how the [*sic*] kissed/were seeing the girls there…" and that "kids were beating each other up."

m.  A March 14, 2012 post entitled "UBH… you really shouldn't have done that." purports to relay information provided by someone Wells calls "Mary" and alleges that Wells "heard [a staff member] threatened Mary

this morning [and] den[ied] a woman with pneumonia meals and medication.

n.  This March 14, 2012 "UBH... you really shouldn't have done that." post goes on to claim that Wells was told that "a woman who needed her medication [and] begged and pleaded for it [and was ignored]".

o.  A March 14, 2012 post entitled "Legends Academy: Another Scandal in the Making" cites a "mother whose 15 year old was admitted to UBH" and alleges that this mother was "threatened" with being taken to court unless she enrolled her child at Legends Academy.

p.  A post entitled "Speechless..." dated March 9, 2012 claims that Wells received a "new email" alleging that "[s]omething really really bad has happened in this facility over the last week" which is "much worse than anything I've shared with my readers this week..."

q.  Another March 9, 2012 post claims that Wells "received an email tonight from the mother of an adolescent [UBH was] holding against her request for discharge."

r.  The blog includes a March 8, 2012 post entitled "Part 2 of a Really Bad Trip to UBH" purporting to be from the mother of a former UBH patient and alleging vague complaints and mistreatment.

s.  In her February 21, 2012 CNN Ireport post, Wells claims that UBH "has been reported to repeatedly hold patients against their will, threaten commitment proceedings, and, even confuse patients with one another."

t.   In her identical March 8, 2012, posts to dallas.craigslist.org and March 29, 2012 "event" on www.eventmonsters.com, Wells alleges that "unacceptable conditions have been reported" including "[c]onfusing one patient with another," "[d]enying patients required medication(s)," "[f]alsifying or changing medical records," and "[a]pproximately 5-10 minutes maximum per day spent under a physician's supervision/care, and, many days not even seen by a physician."

60.   These statements alleged to have been made by the Doe Defendants to Wells are false, defamatory, and intended to harm the Plaintiffs in their business and reputations.

61.   The actions of the Doe Defendants were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiffs.

## FIRST CLAIM FOR RELIEF
### (North Carolina Defamation/Libel)

62.   Plaintiffs replead and restate as if herein set forth in full all of the allegations of this Complaint.

63.   Defendants knowingly published the above-referenced false and defamatory statements about Plaintiffs, constituting defamation under the Law of North Carolina. Defendants' words are susceptible of but one meaning and of such nature that they tend to disgrace and degrade the Plaintiffs or hold them up to public hatred, contempt, or ridicule or cause them to be shunned or avoided and are libelous *per se*, or, when considered with innuendo, colloquium and explanatory circumstances are libelous.

64.   As a direct result of Defendants' defamatory statements, Plaintiffs have suffered serious damage to the reputation, regard, esteem and goodwill associated with their names.

65.     As a direct result of Defendants' actions, Plaintiffs have suffered irreparable harm, substantial financial losses, and damage to their business and personal reputations.

66.     Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiffs.

67.     As a direct result of Defendants' actions, Plaintiffs have suffered great losses, and unless and until Defendants' actions are enjoined, Plaintiffs will continue to suffer actual damages and irreparable harm to their professional reputations.

68.     Plaintiffs have no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
**(Violation of North Carolina Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1 to §75-35)**

69.     Plaintiffs replead and restate as if herein set forth in full all of the allegations of this Complaint.

70.     This claim arises under N.C. Gen. Stat. §75-1, et seq.

71.     Plaintiffs rely upon their untarnished reputations to promote their services and facility to potential clients and consumers.

72.     Defendants have made false and defamatory statements against Plaintiffs, as set forth above.

73.     Through their statements Defendants disparaged Plaintiffs and engaged in and conspired to engage in unfair or deceptive acts or practices in or affecting commerce in violation of N.C. Gen. Stat. §75-1.1.

74.     Defendants' campaign of continuous false, unjustified, and unsubstantiated statements and allegations constitutes a willful and malicious engagement in the deceptive acts or practices described herein.

75.     As a direct result of Defendants' actions, Plaintiffs have suffered irreparable harm, substantial financial losses, and damage to their business reputations.

76.     Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiffs.

77.     As a direct result of Defendants' actions, Plaintiffs have suffered great losses, and unless and until Defendants' actions are enjoined, Plaintiffs will continue to suffer actual damages and irreparable harm to their professional reputations.

78.     Plaintiffs have no adequate remedy at law.

### THIRD CLAIM FOR RELIEF
**(Texas Libel)**

79.     Plaintiffs replead and restate as if herein set forth in full all of the allegations of this Complaint.

80.     Defendants knowingly published the above-referenced false and defamatory statements about Plaintiffs, constituting libel under the Texas Civil Practice and Rem. Code § 73.001, *et seq*.

81.     As a direct result of Defendants' defamatory statements, Plaintiffs have suffered serious damage to the reputation, regard, esteem and goodwill associated with their names.

82.     As a direct result of Defendants' actions, Plaintiffs have suffered irreparable harm, substantial financial losses, and damage to their business and personal reputations.

83.     Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiffs.

84.     As a direct result of Defendants' actions, Plaintiffs have suffered great losses, and unless and until Defendants' actions are enjoined, Plaintiffs will continue to suffer actual damages and irreparable harm to their professional reputations.

85.     Plaintiffs have no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
**(Texas Business Disparagement)**

86.     Plaintiffs replead and restate as if herein set forth in full all of the allegations of this Complaint.

87.     This Claim for relief arises under Texas common law.

88.     As complained of above, Defendants have published false and disparaging statements about the Plaintiffs with malice and without privilege, resulting in damage to the Plaintiffs.

89.     Defendants' actions complained of herein constitute business disparagement under Texas common law.

90.     As a direct result of Defendants' defamatory statements, Plaintiffs have suffered serious damage to the reputation, regard, esteem and goodwill associated with their names.

91.     As a direct result of Defendants' actions, Plaintiffs have suffered irreparable harm, substantial financial losses, and damage to their business and personal reputations.

92.     Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiffs.

93.     As a direct result of Defendants' actions, Plaintiffs have suffered great losses, and unless and until Defendants' actions are enjoined, Plaintiffs will continue to suffer actual damages and irreparable harm to their professional reputations.

94.     Plaintiffs have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
**(Copyright Infringement)**

95.     Plaintiffs replead and restate as if herein set forth in full all of the allegations of this Complaint.

96.     This Claim for relief arises under 17 U.S.C. § 101, et seq. and 17 U.S.C. § 501 through 505.

97.     As alleged above, UBH and Ascend are the exclusive owners of the images attached hereto as Exhibits A through E (collectively "the copyrighted materials").

98.     As alleged above, UBH and Ascend have filed with the United States Copyright Office to register their copyrights in the copyrighted materials.

99.     Wells has had access to the copyrighted materials through the Internet.

100.    Wells misappropriated the copyrighted materials by copying them from the UBH and Ascend websites on the Internet.

101.    Wells has willfully infringed upon UBH's and Ascend's copyrights with respect to the copyrighted materials.

102.    Wells has used UBH's and Ascend's copyrighted materials in her campaign to impugn the character of the Plaintiffs, as a result of which Plaintiffs have sustained, and will continue to sustain, substantial injury, loss and damage in an amount to be proven at trial.

103.    Wells' infringement of UBH's and Ascend's copyrighted materials has caused Plaintiffs irreparable harm and injury and unless and until Wells is immediately and permanently enjoined, Plaintiffs will continue to suffer irreparable harm and injury.

104.    Plaintiffs have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF
### (Civil Conspiracy)

105.    Plaintiffs replead and restate as if herein set forth in full all of the allegations of this Complaint.

106.     The Defendants conspired, as alleged above, to commit unlawful acts, or to do lawful acts in an unlawful way.

107.     The Defendants' conspiracy involved a common scheme to defame the Plaintiffs, damaging their character, reputations and business.

108.     One or more of the Defendants, in furtherance of their conspiracy, committed an overt act in furtherance of that conspiracy.

109.     As a direct result of Defendants' overt acts and conspiracy, Plaintiffs have suffered irreparable harm, substantial financial losses, and damage to their business and personal reputations.

110.     Defendants' actions were malicious, intentional, oppressive, outrageous, and evidence a complete callous disregard for the rights of Plaintiffs.

111.     As a direct result of Defendants' overt acts and conspiracy, Plaintiffs have suffered great losses, and unless and until Defendants' actions are enjoined, Plaintiffs will continue to suffer actual damages and irreparable harm to their professional reputations.

112.     Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment against Defendants, on each of their claims, and grant Plaintiffs the following relief:

1.     Enter judgment in favor of Plaintiffs on each of their claims;

2.     Adjudge that Defendants have defamed and libeled the Plaintiffs, and preliminarily and permanently enjoin Defendants from engaging in further defamation of Plaintiffs;

3.    Adjudge that Defendants have Violated the North Carolina Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1, and preliminarily and permanently enjoin Defendants from engaging in further deceptive acts or practices against Plaintiffs;

4.    Adjudge that Defendants have committed business disparagement, and preliminarily and permanently enjoin Defendants from engaging in further such practices against Plaintiffs;

5.    Adjudge that Wells has infringed upon UBH's and Ascend's copyrights, and preliminarily and permanently enjoin Wells from engaging in further infringement against Plaintiffs;

6.    Adjudge that Defendants have conspired against the Plaintiffs, and preliminarily and permanently enjoin Defendants from engaging in further such practices against Plaintiffs;

7.    Enter an Order directing Wells to transfer to the Plaintiffs ownership of all Internet domain names owned by her and used by her to further her campaign against the Plaintiffs;

8.    Enter an Order requiring the delisting and removal of the URLs and any cached copies of Defendants' Internet postings complained of herein, and any similar postings, from the search results of Google and any other search engine;

9.    Award Plaintiffs compensatory damages in an amount to exceed $500,000.00;

10.   Award Plaintiffs punitive damages in an amount to exceed $5,000,000.00;

11.   Award Plaintiffs trebled damages pursuant to N.C. Gen. Stat. §75-16 or on such other grounds as the Court may deem appropriate;

12.     Award Plaintiffs their attorneys' fees pursuant to the Copyright Act, N.C. Gen.

        Stat. §75-16.1, and on such other grounds as the Court may deem appropriate;

13.     Award Plaintiffs their costs; and

14.     Award Plaintiffs such other further relief as this Court may deem equitable.

**PLAINTIFFS REQUEST A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**


Dated:  May 3, 2012                    Respectfully Submitted,

                                       ASCEND HEALTH CORPORATION, a
                                       Delaware Corporation,
                                       UHP, LP., a Delaware limited partnership
                                       (d/b/a University Behavioral Health of
                                       Denton),
                                       RICHARD KRESCH, M.D., an individual,
                                       and
                                       ATIQUE KHAN, M.D., an individual,
                                       By their attorneys,


                                        _/s/ Mark W. Ishman_____
                                       Mark W. Ishman, Esq.
                                       NC Bar No. 27908
                                       Ishman Law Firm, P.C.
                                       9660 Falls of Neuse Road
                                       Suite 138-350
                                       Raleigh, NC  27615
                                       Tel:    (919) 468-3266
                                       Fax:    (919) 882-1466
                                       email:  mishman@ishmanlaw.com


                                       John W. Dozier, Jr.
                                       VA Bar # 20559
                                       *Pro hac vice forthcoming*
                                       Dozier Internet Law, P.C.
                                       11520 Nuckols Road, Suite 101
                                       Glen Allen, VA 23059
                                       Tel:    (804) 346-9770
                                       Fax:    (804) 346-0800
                                       email:  jwd@cybertriallawyer.com

*Attorneys for Plaintiffs*